GEORGIE PETRIE by G. HARRISON SMITH, her Guardian ad litem, Respondent, v. FREDERICK WILLIAMS and THOMAS H. BREEN, Appellants.

*Conversion of promissory notes belonging to an infant — contracts between attorney and client — an infant's liability for legal services — avoidance of an infant's executory contract — testimony given by one defendant in another proceeding, inadmissible as against a co-defendant.*

As a condition of the settlement of an action for a breach of promise of marriage, brought by an infant, the defendant in that action agreed to give her his promissory notes for a certain amount; in the infant's absence these notes were taken by her attorney, Breen, and were made payable to him, without the infant's knowledge or consent; thereafter a third party, Williams, by arrangement with Breen, indorsed the notes and obtained their discount by and transfer to a *bona fide* holder before maturity. The proceeds of the notes were received by Breen and Williams and only a portion thereof turned over to the infant; thereafter the infant, by guardian, brought an action against Breen and Williams to recover the value of the notes, on the ground of their conversion.

*Held,* that as the evidence tended to show that before any of the notes were transferred, both defendants knew that the plaintiff was an infant, and that there was a concert of action on their part to procure the notes without paying the plaintiff an adequate compensation therefor, it was sufficient to require the submission to the jury of the question of Williams' good faith in procuring, indorsing and transferring the notes, and to justify a verdict against him, as well as against Breen.

An attorney who seeks to avail himself of a contract made with his client must establish affirmatively that it was made by the client with a full knowledge of all the material circumstances known to the attorney and is in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him.

If a liability exists on the part of an infant to pay for services performed by an attorney, when necessary for the infant's protection or that of his estate, such liability is limited to the actual value of the services rendered, and the infant will not be bound by any agreement which he may have made as to the amount.

An infant cannot authorize or consent to the transfer of a promissory note belonging to him, so as to relieve another from liability for a conversion of the note.

*Semble,* that an executory contract of an infant, relating to his personal property, may be avoided by him during infancy.

The defendants contended that the plaintiff could not recover without tendering to the defendant Breen all she had received from him. It appeared that the defendants were permitted to prove all that had been advanced to the plaintiff, and the jury deducted that amount from the value of the notes other than

those which had been delivered to Williams for real estate conveyed to the plaintiff, and also that all the money that had been paid to the plaintiff by Breen had been expended or squandered by her during her infancy.

*Held*, that under these circumstances, the defendants had no moral or legal right to require the plaintiff to restore the money received by her, as they were allowed the full benefit of the amount thus paid, and the plaintiff could not make such restoration.

Before the trial and subsequent to the transfer of the notes in question, the defendant Breen had been examined in proceedings supplementary to execution, at which examination the defendant Williams was not present; a part of the testimony given on this examination which tended to rebut receipts of the plaintiff acknowledging certain payments to her by Breen was admitted in evidence against both defendants, over the objection of the defendant Williams, that it was incompetent and hearsay.

*Held*, that this testimony was competent as against Breen but not as against Williams, and that its admission as against the latter was error which called for a reversal of the judgment as against him.

SEPARATE APPEALS by the defendants, Frederick Williams and Thomas H. Breen, from a judgment of the Supreme Court, entered in the office of the clerk of Jefferson county on the 18th day of March, 1892, upon a verdict in favor of the plaintiff rendered at the Jefferson Circuit, and from orders denying a motion for a new trial, made by the defendant on the minutes of the trial judge.

*Watson M. Rogers*, for appellant Williams.

*Hannibal Smith*, for appellant Breen.

*Elon R. Brown*, for respondent.

MARTIN, J.:

This action was to recover the value of five promissory notes, of which the plaintiff was the owner, and to which she claimed the right of possession. The plaintiff was an infant. When about nineteen years of age, she and one Jeremiah Petrie entered into a contract, by which each agreed to marry the other. While this contract was in existence, and before it was performed, the plaintiff was seduced by Petrie, who then refused to fulfill his contract.

While matters between the plaintiff and Petrie were in that situation, she employed the defendant, Thomas H. Breen, to commence an action against Petrie to recover damages for the breach of his

marriage contract. In pursuance of this employment, Breen applied for the appointment of a guardian *ad litem* of the plaintiff, who was appointed December 17, 1889.

On December 19, 1889, an action was commenced by Breen for the plaintiff against Petrie, and on the twenty-first day of the same month, an agreement was entered into between her and Petrie for the settlement of the action, whereby Petrie agreed to marry her and give her his notes for the sum of $3,000. In performance of this agreement, Petrie made his five promissory notes for that sum, four of which were for $500 each, and one for $1,000, and delivered them to Breen for the plaintiff, and also married her. The notes were taken by Breen in the absence of the plaintiff, and were made payable to him or his order, without her knowledge or consent.

After the marriage and delivery of the notes to Breen, and on December 31, 1889, he attempted to get one of the $500 notes discounted at the Watertown National Bank, but the bank refused to discount it. Thereupon the defendant Williams indorsed it, and procured it to be discounted by that bank for Breen. On the same day Williams transferred to Breen certain mortgages, which he (Williams) held on property in the city of Watertown, the title to which stood in the name of Breen's deceased wife, and received therefor the $1,000 note given by Petrie to the plaintiff.

On the 15th of January, 1890, the defendant Williams came to Watertown on the suggestion of Breen, and sold Breen a house and lot worth $600 or $700, and transferred it to plaintiff, for which he received two other of the $500 notes, and gave his check to Breen for $250. The consideration named in the deed was $1,500, and the plaintiff was informed that that was the price paid. When the deed was given to the plaintiff, she executed a mortgage on the premises to Breen for $450, which he subsequently assigned to Williams as security for indorsements made by him for Breen.

On April 16, 1890, Williams purchased the last $500 note of Breen, and gave him his check for the amount. Thus Williams became the holder of all the notes given to the plaintiff on the settlement of her action, except the $500 note which he procured to be discounted for Breen. The notes that came into Williams' possession were transferred by him to the bank before they became due. Thus, through the instrumentality of Williams and Breen, the notes

for $3,000, given plaintiff in settlement of her cause of action, were all transferred to a *bona fide* holder before they became due.

The evidence tended to show that before any of the notes were transferred, both defendants knew that the plaintiff was an infant, and that there was a concert of action on their part to secure these notes without paying her an adequate compensation therefor. This is shown both by circumstances and direct proof. It seems impossible to harmonize the circumstances and course of action pursued by the defendants, with an intent upon the part of either to deal justly and fairly with the plaintiff. We think the evidence was sufficient to require the submission to the jury of the question of the good faith of Williams in procuring, indorsing and transferring these notes, and to justify the verdict against him. (*Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Canajoharie N. Bank* v. *Diefendorf*, 123 id. 191.) It follows, therefore, that the judgment should be sustained, unless the form of the action was improper, or there is some other valid exception which requires a reversal.

But it is said that there was a written agreement between the plaintiff and Breen, by which he was to have, as a compensation for his services, one-half of the recovery or amount secured by settlement, and that subsequently a written settlement was had between them by which the notes were divided. The answer to this claim is: (1) That the plaintiff testified that she never made any such agreements, and that her signatures to the papers introduced in evidence, including the receipts as well as the agreements for compensation and of settlement, were obtained without her knowledge as to the contents of the papers signed. (2) That she was at the time an infant, and the agreements were voidable, and of no binding force as against her.

The plaintiff testified positively that no such agreement for compensation was made, but that she paid defendant Breen a retainer of $100 when she employed him, and agreed that he should have $500 out of any amount recovered by her, whether by suit or settlement. The question whether the agreement was as claimed by the defendant, or as claimed by the plaintiff, was for the jury, and it is manifest that it found for the plaintiff. An attorney who seeks to avail himself of a contract made with his client, must establish affirmatively that it was made by the client, with full knowledge of all the

material circumstances known to the attorney, and is in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him. ( *Whitehead* v. *Kennedy*, 69 N. Y. 462 ; *Tragman* v. *Littlefield*, 45 N. Y. St. Repr. 673.)

When tested by this rule, it is obvious that the agreements and receipts relied upon by the defendants cannot stand, if the plaintiff's testimony is believed. Besides, the plaintiff was an infant, and, therefore, the agreements and receipts were not binding upon her.

The defendants, however, claim that Breen's services as a lawyer were so far necessary that the plaintiff could make a valid contract therefor, and her infancy was not a defense to such a contract. To sustain this claim, they cite the case of *Munson* v. *Washband* (31 Conn. 303). An examination of that case discloses that it is not a sufficient authority to uphold their claim. There is a clear distinction between that case and the case at bar. In the *Munson* case, which was an action somewhat similar to this, it was held that an action could be maintained to recover the value of the services of an attorney when they were necessary to protect the rights of an infant. That proposition is not disputed here. But the plaintiff claims that, although she was liable for services performed for her by an attorney when necessary for her protection, or the protection of her estate, yet, that she was liable only for the actual value of the services rendered, and was not bound by any contract she made as to the amount. There is nothing in the case cited inconsistent with this claim.

While an infant may bind himself for the value of necessaries purchased or furnished, he is not bound by the agreed price, if it is in excess of the actual value. (*Baum* v. *Stone*, 12 Wkly. Dig. 353.) Indeed, this case was tried upon the theory that the plaintiff was liable to Breen for the actual value of his services, and it was proved that they were worth from $100 to $250. It quite clearly appears, we think, that the jury allowed the defendants the value of Breen's services as established by the proof.

Before proceeding further, it will be well to note that the court withdrew from the consideration of the jury all questions relating to the two $500 notes that were transferred by Breen to Williams for

his check of $250 and the house and lot, upon which Breen secured a mortgage for $450, which he transferred to Williams. Still, the particulars of that transaction are before us as a part of the whole transaction between the parties, and disclose the extraordinary zeal and eagerness with which the defendants sought to possess themselves of the property of the plaintiff, and the absence upon their part of any attempt at fairness in their dealings with her.

By an examination of the appeal book, it will be seen that after deducting from the amount of plaintiff's notes the two $500 notes, a portion of which was invested in real estate, the value of Breen's services, and the amount which the plaintiff testified that she received of Breen, there was then remaining in defendants' hands an amount in excess of the verdict rendered. Hence, if the action could be maintained, the recovery was as favorable to the defendants as they could properly ask.

By reference to the complaint, it will be seen that so far as material to the question before us, the plaintiff alleged ownership of the notes; that Breen while acting in her behalf caused his own name to be inserted therein as payee, and that thereafter the defendants took possession of and converted them to their own use.

The defendants contend that the plaintiff authorized Breen to transfer these notes, and consequently that neither he nor Williams was guilty of conversion. The evidence was such as to justify the jury in finding that the defendant Breen transferred the notes in question without any authority whatever from the plaintiff, and that the pretended consent of plaintiff was improperly obtained by Breen. Besides, the plaintiff being an infant, her consent was invalid.

Under the circumstances of this case, we think the plaintiff was entitled to maintain this action. In *Stafford* v. *Roof* (9 Cow. 626), where an infant sold a horse belonging to him, but there was no proof that he delivered the horse with his own hand, and the vendee afterwards offered to sell the horse, it was held that trover would lie by the infant even before coming of age.

In *Comstock* v. *Hier* (73 N. Y. 269), where a note was indorsed for a special purpose by the plaintiff, and it was transferred by the makers to defendants, in payment of an antecedent debt, and defendants transferred it to a *bona fide* holder before due, for value, who

collected it of the plaintiff, it was held that the plaintiff had an election either of bringing an action of trover for the conversion of the note, or for money had and received, to recover the money realized by defendant on sale thereof. The doctrine of this case was also recognized in *Farnham* v. *Benedict* (107 N. Y. 159, 173).

In *Decker* v. *Mathews* (12 N. Y. 313), it was held that the maker of a negotiable promissory note could maintain an action for its conversion against a person, who, before it had any legal inception, wrongfully negotiated it to a *bona fide* holder for value.

In *Laverty* v. *Snethen* (68 N. Y. 522), the plaintiff indorsed and delivered a promissory note belonging to him to the defendant, who gave a receipt therefor, stating that it was to be returned the next day, or the avails thereof. The plaintiff instructed the defendant not to let the note go out of his reach without receiving the money, and defendant delivered the note to a third person, under the promise by the latter that he would get it discounted, and return the money. He took the note away, and procured it to be discounted, but appropriated the avails. In an action for the conversion of the note, it was held that the act of the defendant in permitting the note to go out of his possession was an unlawful interference therewith, and constituted a conversion. See, also, *Carver* v. *Creque*, 48 N. Y. 385; *Develin* v. *Coleman*, 50 id. 531; *Powell* v. *Powell*, 71 id. 71; *Hynes* v. *Patterson*, 95 id. 4; *Metropolitan E. R. Co.* v. *Kneeland*, 120 id. 134; *Comley* v. *Dazian*, 114 id. 161.)

Another claim of the appellants is that this action was prematurely brought because the plaintiff was an infant when it was commenced, and could not avoid her contracts until she arrived at full age. In considering this question, it must be remembered that the transaction, so far as it related to real estate, was withdrawn from the jury, so that the question whether she could avoid her contract relating to real estate before her majority, is not before us. The question upon this branch of the case is whether the executory contract of the plaintiff could be avoided by her during her infancy. While there may not be entire harmony in the decisions upon this question, yet, we think, it must be regarded as settled in this State, that an executory contract relating to the personal property of an infant may be avoided by her during her infancy. (*Bool* v. *Mix*, 17 Wend. 119; *Stafford* v. *Roof*, 9 Cow. 626; *Chapin* v. *Shafer*,

49 N. Y. 407; *Sparman* v. *Keim*, 83 id. 245 ; *Beardsley* v. *Hotch-kiss*, 96 id. 201, 211.)

The appellants also contend that the plaintiff could not recover in this action without tendering to the defendant Breen all she received. To this there are two answers : *First*, that the defendants were permitted on the trial to prove all that had been advanced the plaintiff, and the jury deducted that amount from the value of the notes other than those delivered to Williams for real estate ; and, *second*, all the money that had been paid to the plaintiff by Breen had been expended or squandered by her during her infancy. Under these circumstances, the defendants had no moral or legal right to require the plaintiff to restore the money received by her, as they were allowed the full benefit of the amount thus paid, and the plaintiff could not make such restoration. (*Green* v. *Green*, 69 N. Y. 553.)

Having now considered all the questions raised by the appellants relating to the plaintiff's right to maintain this action, and having reached the conclusion that it can be maintained, and that the evidence was sufficient to sustain the recovery herein, the exceptions taken upon the trial to the rulings of the court on the reception and rejection of evidence, and to its instructions to the jury remain to be considered.

At the close of the charge, the appellants' counsel stated : " I think your honor has already charged it, that if the jury find that the notes were transferred to Mr. Williams with the assent, or by the direction, of the plaintiff, this action for conversion does not lie against Williams." To which the court replied : " Yes, but I charge at the same time that if she was an infant, her assent to it would not confer authority because she had no power to authorize it, being an infant." Whereupon the defendants' counsel said : " I desire to except to so much of your Honor's statement as is to the effect that her infancy would prevent her giving an assent, which would defeat the action of trover. The court.—You may have that exception." The defendants also excepted " to the submission of the question of the conversion of the one-thousand-dollar note to the jury, and also to the submission of the question of the conversion of the five-hundred-dollar note which was purchased April 15." The questions already considered are the only ones.

raised by these exceptions. As we have already discussed them, and arrived at a conclusion adverse to the appellants, no further consideration of them is required.

Before the trial of this action, and subsequent to the transfer of the notes in question, the defendant Breen had been examined in proceedings supplemental to execution. The examination was in the absence of the defendant Williams. The testimony thus taken was offered in evidence. It was objected to on behalf of the defendant Williams as incompetent and hearsay. Upon the questions raised by this objection, the court ruled as follows: "The court.— I hold that such part of said examination as tends to rebut the receipts acknowledging payment by Breen to plaintiff is competent. To that extent I overrule the objection." This evidence was offered after the defendants had introduced the receipts, and tended to corroborate the plaintiff's claim that Breen had not paid her the amount mentioned in the receipts. It was admissible against Breen, but not as against the defendant Williams. (*Scofield* v. *Spaulding*, 54 Hun, 523.) In that case, we examined this question quite fully, and, therefore, deem any further examination of it by us quite unnecessary.

There are other questions to which attention has been called, but as the judgment must be reversed for the error already pointed out, and as it is improbable that those questions will arise upon another trial, no good purpose can be served by a discussion of them at this time.

As a majority of the court are of the opinion that the judgment should be affirmed as to the defendant Breen, and reversed on the exceptions, and a new trial granted, with costs to abide the event as to the defendant Williams, it follows that the judgment as to the defendant Breen and the order denying his motion for a new trial should be affirmed, with costs, and that the judgment as to the defendant Williams, and the order denying his motion for a new trial should be reversed on the exceptions, and a new trial ordered, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order, as to defendant Williams, reversed on the exceptions and a new trial ordered, with costs to abide the event.